UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

HEIDI HESS DESIGNS, LLC.,
a Florida Limited Liability Company and
HEIDI HESS, Individually

CASE NO. 14-cv-62646 Cooke/Torres

Plaintiffs,

v.

LINDA VENDOME, Individually,

Defendant.
______________________________________/

# PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION WITH INCORPORATED MEMORANDUM OF LAW

**COMES NOW,** the Plaintiffs, ***Heidi Hess Designs, LLC.***, a Florida Limited Liability Company ("HHD") and ***Heidi Hess***, Individually ("Hess"), (both collectively "Plaintiffs") by and through its undersigned counsel and files this Motion for Preliminary Injunction pursuant to Federal Rule of Civil Procedure Rule 65 against Defendant, ***Linda Vendome***, Individually ("Vendome"), and alleges as follows:

## BACKGROUND

1. This is an action for injunctive and other relief under the common law of the State of Florida for libel per se, slander per se, tortious interference with a business relationship and intentional infliction of emotional distress.

2. HHD is an internationally recognized fashion brand specializing in women's clothing.

3. HHD was created in Florida in approximately 2003 by celebrity Heidi Hess - fashion designer, radio and television personality. Heidi Hess is HHD's managing member. [See Hess Declaration P. 2].

4. HHD has been experiencing significant increased success in the fashion industry growing from its original Florida location to include operations and retail sales locations in New York and Chicago. [See Hess Declaration P. 3].

5. Due to rapidly increasing demand, HHD wished to obtain funding for greater inventory demands for the 2014 holiday season. [See Hess Declaration P. 4].

6. HHD and Vendome met and began a short business relationship beginning on or about late April 2014 and ending on October 7, 2014. [See Hess Declaration P. 5].

7. Through October 2, 2014, the Hess and Vendome had discussions culminating in a verbal agreement that Vendome would make a cash delivery to HHD within three (3) days for part of HHD's additional inventory funding requirements. [See Hess Declaration P. 6].

8. Hess and Vendome had discussions and exchanged drafts of proposed documents related to this proposed agreement but did not mutually execute any documents as of October 7, 2014. [See Hess Declaration P. 7].

9. Through October 2, 2014, Vendome tendered some but not all of the agreed funding amount and on or about October 7, 2014, Vendome indicated she refused to tender the remainder. [See Hess Declaration P. 8].

10. Despite Vendome's breach of the verbal agreement, between, approximately October 23, 2014, and November 6, 2014, Vendome and Hess communicated through counsel regarding the amicable conclusion of their business relationship. [See Hess Declaration P. 9].

11. Through November 6, 2014, counsel for Vendome and Hess agreed that (1) the parties would not pursue a business relationship any further and (2) that HHD would pay Vendome the entire principal advanced plus some amount of interest in monthly payments beginning January 1, 2015. [See Hess Declaration P. 10].

12. Vendome proposed a long term principal payout but HHD requested a much shorter term. [See Hess Declaration P. 11].

13. Vendome's proposal would have generated $1364.52 in the short term proposed. An amortization sheet for Vendome's proposed terms is attached to the Complaint as ***Exhibit B***

14. HHD responded with a written proposal of full payment of principal in the shorter term plus $1000 interest, ***a difference of $364.52*** from Vendome's proposal. HHD memorialized all the terms of HHD's proposal in a Settlement and Mutual Release Agreement and delivered it to Vendome's attorney on November 6, 2014. A true copy thereof is attached to the Complaint as ***Exhibit C***. [See Hess Declaration P. 12].

## THE DEFAMATION

15. Vendome did not reply to HHD's proposed Settlement and Mutual Release Agreement or make any further communication with HHD through November 21, 2014. [See Hess Declaration P. 13].

16. On or about Friday, November 21, 2014, Vendome published an article about HHD and Hess (the "False Publication") on a website named www.ripoffreport.com. A true copy of the False Publication is attached hereto as **Exhibit A.** The material allegations in the False Publication are, in fact, false. [See Hess Declaration P. 14].

17. The False Publication, **Exhibit A,** is entitled "Heidi Hess Designs LLC. Heidi Hess Clothing Company Investment Fraud Chicago, NYC, Ft. Lauderdale Nationwide" in large

font red letters residing at the Internet address http://www.ripoffreport.com/r/Heidi-Hess-Designs-LLC/nationwide/Heidi-Hess-Designs-LLC-Heidi-Hess-Clothing-Company-Investment-Fraud-ChicagoNYC-FtLaud-1190572#. The material allegations in the False Publication are, in fact, false.

18. The False Publication, **Exhibit A**, states that HHD and Hess have committed fraud some five (5) times and that

> "(L)aw Enforcement in three states and the FBI have been contacted and ***are intending to apprehend the "Heidi Hess."*** (sic) (emphasis added)

19. Within hours of posting the False Publication, HHD and Hess became aware of its publication through business affiliates of HHD. [See Hess Declaration P. 15].

20. On November 21, 2014, HHD and Hess, through counsel, threatened litigation and made demand upon Vendome, through counsel, to take down all copies of the False Publication and to cease and desist any further publication of the false information contained therein. [See Hess Declaration P. 16].

21. The following day on November 22, 2014 Vendome posted the following on the website:

> "We are retracting the above report as settlement discussions are now being iniated." (sic) (See **Exhibit A**).

22. Upon information and belief, Vendome has verbally communicated at least part of the False Publication to individuals, specifically including the five (5) alleged fraud accusations. [See Block Declaration P. 2].

23. Vendome has failed and refused to remove the False Publication to date or demand that the owners of www.ripoffreport.com do so as her agent and publisher and

has failed to agree to cease and desist all future verbal communication of the False Publication. [See Hess Declaration P. 17].

24. Since the original publication of the False Publication HHD and Hess have come to learn that the False Publication has been reproduced on another website known as www.scamorg.com at http://www.scamorg.com/search?search=heidi+hess [See Hess Declaration P. 29]. A true copy thereof is attached hereto as **Exhibit B.**

25. Defendant's aforesaid acts have caused and will continue to cause substantial and irreparable injury, amounting to a specialized harm, to Plaintiffs unless such acts are restrained by this Court.

26. Plaintiffs have no adequate remedy at law.

27. Any relief available to Plaintiffs falling short of a preliminary injunction will result in continued substantial and irreparable injury to Plaintiffs and fail to insure that Plaintiffs' rights are protected and enforced. [See: Hess Declaration P. 18].

28. Plaintiffs have acted with a sense of urgency since learning of Defendant's defamatory activities. Plaintiffs exchanged several back and forth correspondence with Defendant in an attempt to amicably resolve the dispute. [See Block Declaration P. 3]. When such efforts did not result in a resolution, Plaintiffs moved forward with the drafting of the Complaint and this Motion for Preliminary Injunction. [See Block Declaration P. 3].

29. Plaintiffs have acted as quickly as possible in the pre-litigation stages of this claim after learning of Defendant's defamatory activities against Plaintiffs, in clear violation of law.



*Bradley Legal Group, P.A.*, 15 Northeast 13th Avenue, Fort Lauderdale, FL 33301 (954) 523-6160

30. Plaintiffs have already and will continue to face incalculable damages in the event Defendant is not temporarily and permanently enjoined from her unlawful activities. [See: Hess Declaration P. 19].

31. The threatened injuries to Plaintiffs outweigh any possible harm to Defendant and Plaintiffs have a clear right to the requested relief.

32. An injunction would serve the public interest in that it would prevent Defendant from continuing her unlawful defamatory activities to the detriment of Plaintiffs and the public. Specifically, the False Publication requested action by the public to assist law enforcement in Hess' apprehension which can lead to dangerous or disasterous results for the public. [See Hess Declaration P. 20].

33. Plaintiffs come to the Court with clean hands and ready to perform any act required by this Court regarding equitable relief sought. [See Hess Declaration P. 28].

## MEMORANDUM OF LAW

Plaintiffs bring this motion to temporarily enjoin Defendant's defamatory activities. Plaintiffs filed a four-count Complaint in this action, including counts for: (1) Common Law Libel per se; (2) Common Law Slander per se; (3) Tortious Interference with a Business Relationship; and (4) Intentional Infliction of Emotional Distress. Based on the following authority, Plaintiffs are clearly entitled to injunctive relief.

### I. Preliminary Injunction Standard

The general function of a preliminary injunction is to preserve the status quo until full relief can be granted following a final hearing. *Burgos v. Univ. of Cent. Florida Bd. of Trustees*, 83 F. Supp. 2d 1268, 1271 (M.D. Fla. 2003). While injunctive relief is not usually available in defamation actions, "a limited exception to the general rule" exists. *Chevaldina v. RK/FL*

*Management, Inc.*, 133 So.2d 1086, 1090 (Fla. 3d DCA 2014) citing *Vrasic v. Leibel*, 106 So.3d 485, 486 (Fla. 4th DCA 2013). "[W]here the defamatory words are made in the furtherance of the commission of another intentional tort," the "limited exception to the general rule" applies. See *Id*. citing *Murtagh v. Hurley*, 40 So.3d 62 (Fla. 2d DCA 2010) and *Zimmerman v. D.C.A. at Welleby, Inc.*, 505 So.2d 1371 (Fla. 4th DCA 1987). See also *Gunder's Auto Center v. State Farm Ins*., 617 F. Supp. 2d 1222, 1225 (M.D. Fla. 2009) (holding plaintiff failed to establish an "extraordingary circumstance" to justify the granting of an injunction in a defamation action). This "limited exception" applies to the instant case as Defendant's statements in the False Publication were made in furtherance of tortiously interfering with a business relationship and intentional infliction of emotional distress on Hess and caused Plaintiffs to suffer a special harm and incalculable damages. *Vrasic*, 106 So.3d at 487 citing *Zimmerman* and *Murtagh* (supra).

"The decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity." *eBay, Inc. v, MercExchange, LLC*, 547 U.S. 388, 394 (2006). The requirements for establishing the right to a preliminary injunction are: (1) the likelihood of irreparable harm; (2) the unavailability of an adequate remedy at law; (3) the substantial likelihood of success on the merits; (4) the threatened injury to the plaintiff outweighs the possible harm to the defendant; and (5) the granting of the preliminary injunction will not disserve the public interest. *Chevaldina*, 133 So.3d at 1089 citing *Miami Beach v. KUONI DESTINATION MGT.*, 81 So.3d 530, 532 (Fla. 3d DCA 2012). Clearly, the balance of equities heavily favors the Plaintiffs in this case such that justice requires this Court to enjoin Defendant from any further defamatory statements made against Plaintiffs and to remove the False Publication.

A. **Irreparable Harm and Inadequate Remedy at Law**

"In order to obtain injunctive relief prior to a trial on the merits, a party must show that the activity to be prohibited is causing irreparable harm for which any available remedy at law would be inadequate..." *Zimmerman*, 505 So.2d at 1373. The harm Plaintiffs face include loss of business relations with its manufacturer, the mall sales locations, its present and future customers and potential sales as well as incalculable harm to their brand and business reputation due to the continued world wide display of the False Publication to anyone who searches the Internet for "Heidi Hess" or "Heidi Hess Designs." [See Hess Declaration P. 21]. The remedy at law, an action for damages, would be inadequate because of the difficulty in determining how many business relationships and sales were lost and what the profit on each such transaction would have been. Thus, damages are said to be speculative and unascertainable. The harm is therefore irreparable and the remedy at law inadequate. See *Zimmerman*, 505 So.2d at 1373. Damages from loss of sales is "incalculable." See *Id*. at 1372. The facts and application of law hereto indicate that Plaintiffs face immediate irreparable harm and there is no adequate remedy at law available absent the issuance of a preliminary injunction. Plaintiffs have suffered, and will continue to suffer, irreparable injury. These injuries and damages are a special harm, thus the exception in granting injunctions for defamation is applicable to the instant case. See *Vrasic*, 106 So.3d at 487 citing *Zimmerman* and *Murtagh* (supra).

Here, Defendant is harming Plaintiffs' reputation through their unlawful conduct on a continuing basis, thereby causing Plaintiffs to lose all control over their reputation. [See Hess Declaration P. 21]. There is no indication that Defendant plans to remove the False Publication. [See Hess Declaration P. 21]. Each time a business relationship, a customer or potential customer researches Plaintiffs online, through Google or another search engine, Plaintiffs suffer further

irreparable injury and specialized harm by republication of the False Publication. [See Hess Declaration P. 21].

The injuries that Defendant has inflicted on Plaintiffs strike at the core of the Plaintiffs' business and is calculated to and has caused actual, irreparable damage to Plaintiffs. If Defendant is permitted to maintain its publishing of the False Publication, Plaintiffs' business and reputation, and perhaps the entirety of the business, will continue to be irreparably harmed. [See Hess Declaration P. 22].

Courts have recognized that the impossibility of ascertaining the amount of Plaintiff's legal damages may establish inadequacy of the legal remedy so as to support an award of injunctive relief and additionally may establish the requisite irreparable character of the injury. *Liza Danielle, Inc., v. Jamko, Inc.*, 408 So. 2d 735 (Fla. 3rd DCA 1982), (citing *Southern Colonization Co. v. Derfler*, 75 So. 790 (Fla. 1917)). An injury is irreparable where the damages are estimable only by conjecture and not by any accurate standard. 42 Am. Jur. 2d Injunctions §49 at 790. One must distinguish between the difficulty of proving that an injury exists and the difficulty of measuring the amount or extent of a proven injury. *See id*. An injury clearly exists here, the only question is the extent.

Plaintiffs will continue to suffer irreparable, specialized harm due to Defendant's actions in the event a preliminary injunction is not granted. The extent of Plaintiffs' injuries is unknown, and, thus, the ultimate damages are clearly incalculable. The evidence unequivocally establishes the irreparable injury and specialized harm to the Plaintiffs. [See Hess Declaration P. 21 and 22].

B. **<u>Substantial Likelihood of Success on the Merits</u>**

Plaintiffs enjoy a substantial likelihood of success on the merits in this litigation. Counts I and II of Plaintiff's Complaint are for Libel per se and Slander per se, respectively. "To recover

for libel or slander under Florida law, a plaintiff must demonstrate that: 1.) the defendant published a false statement; 2.) about the plaintiff; 3.) to a third party; and 4.) the [plaintiff] suffered damages as a result of the publication." *Thompson v. Orange Lake Country Club, Inc.*, 224 F. Supp. 2d 1368, 1376 (M.D. Fla. 2002) (internal citation omitted). "Slander is ordinarily confined to defamatory spoken words, whereas libel pertains to defamatory written statements." *Klayman v. Judicial Watch, Inc.*, 2014 WL 2158418, at *4 & n. 2 (S.D. Fla. May 23, 2014). As Defendant has both published the False Publication online and verbally repeated it to others, thus, Defendant has committed both libel and slander. A published statement is libelous or slanderous per se if: "(1) it charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (4) it tends to injure one in his trade or profession." *Klayman,* 2014 WL 2158418 at *2 (quoting *Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953) (en banc)).

In the instant case, Defendant's False Publication on the Internet amounts to libel per se. Defendant's False Publication on the Internet contained false statements about Plaintiffs and the Plaintiffs suffered "incalculable" damages as a result. [See Hess Declaration P. 24]. The false statements include the following: "[L]aw enforcement in three states and the FBI have been contacted and ***are intending to apprehend the "Heidi Hess,"*** (sic) (emphasis added); "This fraud has been committed over 5 times in 7 years for tens of thousands of dollars,"; "The Heidi Hess Design LLC, has been fraudulently obtaining investment capital fromunsuspecting, vulnerable single or divorced women,"; etc. See ***Exhibit A and B***. The False Publication also charged Plaintiffs with infamous crimes, subjected Plaintiffs to distrust, ridicule and disgrace and injured Plaintiffs in their trade and business. [See Hess Declaration P. 24 and **Exhibit A and B**]. Defendant also repeated content from the False Publication in spoken communications,

amounting to slander per se. [See Block Declaration P. 3]. Thus, Plaintiffs enjoy a substantial likelihood of success on the merits in their libel per se and slander per se claims.

Plaintiffs also enjoy a substantial likelihood of success on the merits in their Tortious Interference with a Business Relationship claim, Count III of their Complaint. The elements for a cause of action for tortious interference with a business relationship require the plaintiff to show: "(1) the existence of a business relationship; (2) the defendant's knowledge of that relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) that the aggrieved party was damaged as a result of the defendant's interference." *Boldstar Technical, LLC v. Home Depot, Inc.*, 517 F. Supp. 2d 1283, 1288 (S.D. Fla. 2007) (internal citations omitted). "The business relationship, if not an actual contract, must be 'evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered.'" See *Id*. quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 815 (Fla. 1994).

Plaintiffs have a business relationship with Plaintiffs' manufacturer Awanandes Looms, its retail outlets and others as reflected by contracts. [See Hess Declaration P. 25]. Defendant received adequate notice of the relationship between Plaintiffs and the aforesaid business relationships. [See Hess Declaration P. 25]. Therefore, Defendant was aware and had knowledge of the relationship between Plaintiffs and Awanandes Looms and the other business relationships. By publishing the False Publication on the Internet and in spoken communications, Defendant intentionally and unjustifiably interfered with Plaintiffs' business relationships. [See Hess Declaration P. 25]. Plaintiffs were damaged as a result of the Defendant's interference. Thus, Plaintiffs enjoy a substantial likelihood of success on the merits of their tortious interference with a business relationship claim.



*Bradley Legal Group, P.A.*, 15 Northeast 13th Avenue, Fort Lauderdale, FL 33301 (954) 523-6160

Hess also enjoys a substantial likelihood of success on the merits of her claim for Intentional Infliction of Emotional Distress, Count IV of the Complaint. The elements of a cause of action for intentional infliction of emotional distress are: "(1) the wrongdoer's conduct was intentional or reckless;…(2) the conduct was outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012) quoting *Williams v. City of Minneola*, 619 So.2d 983, 986 (Fla. 5th DCA 1990). "Whether conduct is sufficiently 'outrageous' to state a claim for IIED is a question of law for the Court to decide." See *Id*. citing *Medina v. United Chrisitan Evangelistic Ass'n*, No. 08-22111-CV-Cooke, 2009 WL 653857, at *4, (S.D. Fla. Mar. 9, 2009).

While "Florida common law has evolved an extremely high standard" for what it constitutes as "outrageous conduct," that standard is met in the instant case. See *Id*. quoting *Merrick v. Radisson Hotels Int'l, Inc.*, 06-cv-01591-T-24TGW (SCB), 2007 WL 1576361, at *4 (M.D. Fla. May 30, 2007). According to *McCarson*, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." See *Id*. quoting *Metro. Life Ins. Co. v. McCarson*, 467 So.2d 277, 278-79 (Fla. 1985). "The court must evaluate the conduct as objectively as possible…" *Tello v. Royal Caribbean Crusies, Ltd.*, 939 F. Supp. 2d 1269, 1277 (S.D. Fla. 2013) citing *Ponton v. Scarfone*, 468 So.2d 1009, 1011 (Fla. 2d DCA 1985).

In the instant case, Defendant's statements and accusations in the False Publication were "outrageous" and "beyond all possible bounds of decency,…atrocious, and utterly intolerable in a civilized community." The False Publiction's outrageous, atrocious and intolerable accusations include referring to Hess as (1) a "nationwide investment fraud", (2) a user of an

assumed name, (3) having a "history of taking large amounts of money from naïve, unsuspecting investors with illegal and premeditate intent and malice," (4) a "pathological and career crimnal," (5) requiring "rightful imprisonment for her crimes" and (6) requiring the public to support [her] apprehension. More so Defendant claims that "Law enforcement in three states and the FBI … are intending to apprehend the 'Heidi Hess.'" (See **Exhibit A**). These allegations and the remaining material allegations in the False Publication, are, in fact, false. It would defy the imagination to envison statements more outrageous, atrocious and intolerable than the foregoing. Defendant's intentional or reckless conduct caused Hess severe suffering, including severe stress at the height of the holiday sales season, all while she was continually travelling cross country to care for her ailing mother. [See Hess Declaration P. 27]. Plaintiff therefore meets the elements for intentional infliction of emotional distress and enjoys a substantial likelihood of success on the merits of this claim.

C. **The Threatened Injury To The Plaintiffs Outweighs The Injury To the Defendant**

Any argument that removal from the Internet of the Defendant's False Publication and cessation of publishing any defamatory statement, in either written or verbal form, would unduly harm Defendant is without merit. In order to establish the right to a preliminary injunction, the moving party must show that "the threatened injury to the petitioner outweighs the possible harm to the respondent." *Chevaldina*, 133 So.2d at 1089 (internal ctation omitted).

Any hardship allegedly imposed on Defendant by a Court Order requiring that she remove the False Publication from the Internet is created solely by Defendant's decision to have made the publication. While "[t]here can be no question of the preeminence that the courts have appropriately given to first amendmend righs," "[p]recedent and common sense indicate" that the right is not absolute. *Zimmerman*, 505 So.2d at 1374. "It is a fundamental principle, long

established, that the freedom of speech…secured by the Constitution, does not confer an absolute right to speak or publish, without responsibility, whatever one may choose…" See *Id*. at 1376 quoting *Gitlow v. People of State of New York*, 268 U.S. 652, 666 (1925). Defendant's activities had an adverse influence upon sales of Plaintiffs' goods and business relationships. "[A]ny communication which is defamatory but which is uttered or published incident to another tort" falls under a distinction to grant an injunction. See Id. at 1375. "Defamatory words uttered in aid of another tort are said to constitute 'verbal acts.'" See *Id*.

> Where, however, statements which are libelous or slanderous with respect to a person, his property or business, are published or made as a part and parcel of a course of conduct deliberately carried on to further a fraudulent or other unlawful purpose, a court may grant injunctive relief to prevent irreparable injury.

See *Id*. quoting *West Willow Realty Corp. v. Taylor*, 198 N.Y.S.2d 196, 198 (Sup. Ct. 1960).

Since some of Defendant's activities constitute or are incident to conduct which constitutes tortious interference with a business relationship and intentional infliction of emotional distress, and that the rights thus tortiously violated are entitled to be protected by equitable intervention in the form of a preliminary injunction, this Court should grant the injunction. Because the issuance of such an order will serve to restrain unlawful activities of Defendant, does not burden Defendant's First Amendment right and promotes adherence to the common law of the State of Florida, the balance of hardships involved clearly favors Plaintiffs. See also *Murtagh v. Hurley*, 40 So.3d 62, 67 (Fla. 2d DCA 2010) (Petitioner would have been entitled to injunctive relief had he been able to "present any evidence that demonstrated or would allow an inference that [the defendant's] conduct had a deleterious effect on Dr. Murtagh's business"). As well, from a factual standpoint the claims made in the False Statement do not

even reference the dispute which Defendant had with Plaintiff HHD, thus her First Amendment rights to speak about it are not even impacted.

D. **Considerations of Public Interest**

Clearly, Defendant's False Publication is unlawful and contrary to the public interest. The public interest is served in granting injunctive relief by preserving the rights provided by common law. The Defendant actually called out for assitance from the public to assist the FBI and law enforcement in three states to apprehend Hess. (See **Exhibit A and B**). The public must be made aware that the foregoing was an outrageous, atrocious, malicious and likely criminal act of the Defendant and to stop any efforts that the public might have done to take action into their own hands as directed by Defendant. Such an injunction would inform the public that the FBI and law enforcement agencies in three states are, in fact, NOT attempting to apprehend the Plaintiff. The mind races with scenarios of what could happen with the public if they encounter Hess believing that she is a wanted criminal as Defendant falsely states. The issuance of injunctive relief in this case would serve the public interest by avoiding confusion in the marketplace through the removal of the False Publication. Therefore, issuance of an injunction is necessary to uphold the public interest, and is proper and warranted in this matter.

**CONCLUSION**

Plaintiffs are entitled to preliminary injunctive relief because they have met all of the elements of the traditional test. *State Farm Mut. Auto. Ins. Co. v. Sharon Woods Collision Ctr., Inc.*, No. 1:07cv457, 2007 U.S. Dist. LEXIS 86651 (S.D. Oh. Nov. 26, 2007). The balance of the equities weighs heavily in the Plaintiffs' favor and the Plaintiffs will continue to be irreparably damaged until the Defendant is enjoined and the False Publication is removed from the Internet.

**WHEREFORE**, Plaintiffs pray:

A. That this Court will find that a substantial likelihood of success on the merits exists that the Defendant has engaged in conduct that amounts to libel per se as a direct and proximate result of the intentional or reckless acts of Defendant as set forth in this Complaint, in violation of Plaintiffs' rights under the common law of the State of Florida.

B. That this Court will find that a substantial likelihood of success on the merits exists that the Defendant has engaged in conduct that amounts to slander per se as a direct and proximate result of the intentional or reckless acts of Defendant as set forth in this Complaint, in violation of Plaintiffs' rights under the common law of the State of Florida.

C. That this Court will find that a substantial likelihood of success on the merits exists that the Defendant has engaged in conduct that amounts to tortious interference with a business relationship as a direct and proximate result of the intentional or reckless acts of Defendant as set forth in this Complaint, in violation of Plaintiffs' rights under the common law of the State of Florida.

D. That this Court will find that a substantial likelihood of success on the merits exists that the Defendant has engaged in conduct that amounts to intentional infliction of emotional distress as a direct and proximate result of the intentional or reckless acts of Defendant as set forth in this Complaint, in violation of Plaintiffs' rights under the common law of the State of Florida.

E. That Defendant, and all officers, directors, agents, servants, employees, attorneys, successors, and assigns, and all persons in active concert or participation therewith, be preliminarily enjoined and restrained;

1) From publishing any further false, libelous, defamatory or slanderous publications about Plaintiffs in any medium whatsoever;

2) From doing any other act or thing likely to cause further injury to the image or reputation of HHD and Hess.

F. That this Court order Defendant to cause the False Publication to be removed in its entirety from the Internet including but not limited to archive pages;

G. That Defendants be directed to file with this Court and to serve upon Plaintiff within thirty (30) days after service of the injunction issued in this action, a written report under oath, setting forth in detail the manner of compliance with this Order, including all subparts.

## CERTIFICATE OF SERVICE

***WE HEREBY CERTIFY*** that a true and correct copy of the foregoing was furnished via email to Defendant Linda Vendome via Fedex overnight delivery to 30 The Glen, Glen Headm NY 11545 and 7535 LaPaz Court #202, Boca Raton, FL 33433-6032 this 3rd day of December, 2014.

Respectfully Submitted,

**Bradley Legal Group, P.A.**
Counsel for Plaintiffs
15 Northeast 13th Avenue
Fort Lauderdale, FL 33301
Telephone: (954) 523-6160
Facsimile: (954) 523-6190

By:____________/s/____________

John F. Bradley, Esq.
Florida Bar No.: 0779910
Email: jb@bradlegal.com

# Exhibit A

Is There a Report About You!? Watch This 3 Minute Video!

**Ripoff Report** | Complaints Reviews Scams Lawsuits Frauds Reported. File your review. Consumers educating consumers.™

By consumers, for consumers...

Don't let them get away with it.® Let the truth be known!™












**Report:** #1190572

# Complaint Review: Heidi Hess Designs LLC.

Related Reports

Leonard DeFrancisci DEMACO Leonard DeFrancisci The DeFrancisci Machine Company LLC ,DEMACO, Leonard DeFrancisci bankrupting his own company- The Defrancisci Machine Company- DEMACO. Poster Boy for Corruption, Incompetence and Stupidity. West Melbourne Florida

General Contracting Solutions LLC (AKA Rick Mafnas) Beware of this scammer! Beaumont Texas

Edge Hill, llc Paul Hillaire Paul Hillaire, Paul Saint Hilaire, Vincent Hilaire, Vincent Paul Hilaire, Gerard Hilaire, Vincent Paul Gerard Saint Hilaire, Majestic Farms, Inc. Fake Developer is attempting to scam investors and employees Buellton Nationwide

Neal Neilinger Aladdin Capital, Sabal Palm Bank, Grosvenor Square Capital LLC Exposed Fraud Racketeering IRS Investigation FDIC Investigation Sarasota Florida

Patrick Jerald PJ Rinker dba RP Builders aka RP Development, LLC Unlicensed Contractor - Scam Artist Westminster Colorado

Bitcoin brothers llc bitbrothersllc Cameron Schrong Moneygram SCAM Bitcoin SCAM South Carolina

Asurion Asurion, LLC Asurion won't send me my replacement iPhone 6 but took my 200 dollar deductible. Nashville Tennessee

ROBERT W. BROWER/MIDWAYLOGISTICS LLC BEWARE THE SCAM ARTIST ROBERT W. BROWER-MIDWAY LOGISTICS LLC TOMS RIVER New Jersey

Dependable Carriers LLC Ziare D PopeTony Pope This man uses

**Submitted:** Fri, November 21, 2014 **Updated:** Fri, November 21, 2014
**Reported By:** ScamVictim — **Glen Head New York**

**Heidi Hess Designs LLC.**
Nationwide
USA

**Phone:** 313 550 8070
**Web:** http://www.heidihess.com
**Category:** Clothing Stores

## Heidi Hess Designs LLC. Heidi Hess Clothing Company Investment Fraud Chicago,NYC, Ft.Lauderdale Nationwide

*Author of original report: Settlement Discussions

Like 0 g+1 Recommend this on Google Tweet 0

REBUTTAL BOX™ | Respond to this Report!

Add Rebuttal to this Report | Aribitrate & Set Record Straight

File New Report | Repair Your Reputation

The Heidi Hess Design LLC, has been fraudulently obtaining investment capital from unsuspecting,vunerable single or divorced women. The LLC operated by Ms. Heidi Hess (propbably and assumed name) Or Heidi Hesslin has a history of taking large amounts of money from naive, unsophisticated investors and with illegal premediated intent and malice recieves the cash infusions and then completely ingores and disreards any of the intended promises or guarentees that inspired the investment.

Ms. Hess has used a loophole in the Fla LLC laws to dissolve the LLC after use of the investment proceeds. She then waits several months and reinstates the LLC.

← Is this **Ripoff Report** About you?

**Ripoff Report** A business' first line of defense **on the Internet.**

If your business is




Ripoff Report verified
...businesses you can trust!




Advertisers above have met our strict standards for business conduct.



your services and then refuses to pay you, EVERYONE IS A VICTIM WOMEN, CHILDREN AND MEN Snellville Georgia

Absolute Dental LLC Charged for a service that was already covered in full by insurance West New York New Jersey

Law enforcement in three states and the FBI have been contacted and are intending to apprehend the "Heidi Hess". Ms Hess is Not the sole operator of the investment scam she works with a man named Kyle.

These people are pathological and career criminals and need the public to support their apprehension. This fraud has been commited over 5 times in 7 years for tens of thousands of dollars.

If anyone has information or has been part of the scam please contact so that all the innocent victims can recieve proper restition and Hes and Kyle can be rightfully imprisioned for their crimes.

Thank you

willing to make a commitment to customer satisfaction
Click here now..

Does your business have a bad reputation?
Fix it the right way.
Corporate Advocacy Program™

SEO Reputation Management at its best!

This report was posted on Ripoff Report on 11/21/2014 01:39 PM and is a permanent record located here: http://www.ripoffreport.com/r/Heidi-Hess-Designs-LLC/nationwide/Heidi-Hess-Designs-LLC-Heidi-Hess-Clothing-Company-Investment-Fraud-ChicagoNYC-FtLaud-1190572. The posting time indicated is Arizona local time. Arizona does not observe daylight savings so the post time may be Mountain or Pacific depending on the time of year.

Ripoff Report has an exclusive license to this report. It may not be copied without the written permission of Ripoff Report.

Click Here to read other Ripoff Reports on Heidi Hess Designs LLC.

**Search for additional reports**
If you would like to see more Rip-off Reports on this company/individual, search here:

Heidi Hess Designs LLC. Search Search Tips

## Report & Rebuttal

**Respond to this report!** File a Rebuttal
**Also a victim?** File a Report
**Repair Your Reputation!** Get Started

## Arbitrate

**Remove Reports?**
No! Better yet! Arbitrate to set the record straight!

REBUTTALS & REPLIES:

## Updates & Rebuttals

| 1 | 0 | 0 |
|---|---|---|
| Author | Consumer | Employee/Owner |

**#1** Author of original report

# Settlement Discussions

**AUTHOR: ScamVictim - ()**

SUBMITTED: Saturday, November 22, 2014

We are retracting the prior report as settlement discussions are now being iniated.

**Respond to this report!** File a Rebuttal

## Report & Rebuttal

**Respond to this report!** File a Rebuttal
**Also a victim?** File a Report
**Repair Your Reputation!** Get Started

Featured Ripoff Reports

**Bill O'Reilly Fox News Inaccurate Statements about Ripoff Report**




**John Brewington, Paladin Investigations Arizona-based private investigator, criminal record, who brags about his knowledge of the Internet and his ability to help anti-free speech plaintiffs (always unsuccessful) win their lawsuits. Mr. Brewington has a long history of his own legal problems, a criminal record and may be hiding from his creditors including the IRS. Chandler Arizona**




**Ben Smith Sac County Iowa Attorney prosecutorial misconduct, improper relationship with star witnesses, allowing witnesses to knowingly lie. Tracey Richter Roberts falsely convicted, overwhelming evidence leads to estranged husband Michael Roberts, Rexxfield failed polygraph, witness intimidation, evidence tampering. Iowa Division of Criminal Investigation corruption.**











## Free Tracy Richter

**A Son's Plea: "We are humbly asking for your help in our quest for justice for my mother, Tracey Richter. She was falsely convicted of murder in 2011 for defending her family in a house invasion that occured in 2001."**



Paladin PI John F Brewington - Paladin Investigations: Ripoff Report Rejected EXTORTIONATE Demand from John F. Brewington - Ripoff Report rejected attempted blackmail refusing to Pay Brewington $100,000.00 for Silence, Chandler Arizona

The New "Digital Extortion"
**Is there a Ripoff Report on you?**



**Reputation Management SEO WARNING!**
**They might contact you next!**

BBB: What consumers need to know




20/20 exposes the real BBB

Past Featured Reports

Ripoff Reports



Bo Kelleher facing federal prosecution for the theft of federal agents ID theft
http://www.bokelleher.com/bk/
Ladera Ranch, California

## Arbitrate

**Remove Reports?**
No! Better yet! Arbitrate to set the record straight!




Ripoff Report LEGAL DIRECTORY

**Business's (11)**
**Lawyers and Law Firms (5312)**

- Administrative Law (11)
- Admiralty & Maritime Law (27)
- Agricultural Law (2)
- Alternative Dispute Resolution (10)
- Antitrust & Trade Regulation (1)
- Appellate Practice (72)
- Aviation & Aerospace (11)
- Banking Law (90)
- Bankruptcy (380)
- Business Law (232)
- Civil Rights (55)
- Class Actions (30)
- Commercial Law (13)
- Communications Law (1)
- Constitutional Law (1)
- Construction Law (83)
- Contracts (7)
- Corporate Law (75)
- Criminal Law (668)
- Debtor & Creditor (51)
- Education Law (14)
- Elder Law (77)
- ElectionCampaign & Political (0)
- Eminent Domain (5)
- Employee Benefits (7)
- Energy (0)
- Entertainment & Sports (17)
- Environmental Law (43)
- Family Law (13)
- Finance (0)
- Government (14)
- Government Contracts (2)
- Health Care (1)
- Immigration (482)
- Indians & Native Populations (1)
- Insurance (90)

# Exhibit B

heidi hess

SCAMORG

REPORT SCAM

Try Google AdWords™
Get $75 Worth of Advertising When You Spend $25 With AdWords

# Search results: matching "heidi hess"

## Heidi Hess

The Heidi Hess Design LLC, has been fraudulently obtaining investment capital from unsuspecting,vunerable single or divorced women. The LLC operated by Ms. Heidi Hess (propbably and assumed name) Or Heidi Hesslin has a history of taking large amounts of money from naive, unsophisticated investors and with illegal premediated intent and malice recieves the cash infusions and then completely ingores and disreards any of the intended promises or guarentees that inspired the investment. Ms. Hess has used a loophole in the Fla LLC laws to dissolve the LLC after use of the investment proceeds. She then waits several months and reinstates the LLC. Law enforcement in three states and the FBI have been contacted and are intending to apprehend the "Heidi Hess". Ms Hess is Not the sole operator of the investment scam she works with a man named Kyle. These people are pathological and career criminals and need the public to support their apprehension. This fraud has been commited over 5 times in 7 years for tens of thousands of dollars. If anyone has information or has been part of the scam please contact so that all the innocent victims can recieve proper restition and Hes and Kyle can be rightfully imprisioned for their crimes.

Nov 20, 2014

# Trending Reports

Red Auto Protection
225 comments Apr 23, 2014

Roomster
110 comments Aug 4, 2014

Lustig Roy R
109 comments Sep 11, 2014

Mason Grace Enterprises
88 comments Jun 19, 2014

Izabela Monika Perera Zelarowska
85 comments Apr 30, 2014

Home Income Flow
77 comments Nov 1, 2014

Pacific Brochures
67 comments Apr 14, 2014

DotHop.com
66 comments Sep 18, 2014

Instant Checkmate
65 comments Apr 1, 2014

David Harkai And Katie Lambert
65 comments May 12, 2014